Copy mailed by chambers 2/14/22 DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN RUIZ, :
                Plaintiff, :
v. : **OPINION AND ORDER**
 :
LIBERTY MUTUAL FIRE INSURANCE : 19 CV 4399 (VB)
COMPANY, :
                Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff John Ruiz, proceeding pro se,[1] brings this action against Liberty Mutual Fire Insurance Company ("Liberty Mutual"), asserting that Liberty Mutual breached two homeowner's insurance policies by failing to pay plaintiff's water damage claims. Liberty Mutual asserts two counterclaims, seeking to recover money it paid to plaintiff pursuant to those policies and to investigate plaintiff's claims.

    Now pending is Liberty Mutual's motion for partial summary judgment by which it seeks to dismiss plaintiff's complaint in its entirety. (Doc. #74).

    For the following reasons, the motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Plaintiff was represented by counsel when he commenced this action. (Doc. #1-1). On September 30, 2021, after the instant motion was fully briefed, the Court granted plaintiff's counsel's motion to withdraw. (Doc. #94).

1

**BACKGROUND**

The parties have submitted memoranda of law, declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.[2]

I.  Plaintiff's Living Arrangements

Plaintiff has been married to Yolanda Brooks-Ruiz ("Brooks-Ruiz") since April 2016. Brooks-Ruiz uses the name Yolanda Brooks professionally. Plaintiff's first marriage ended in divorce, and his ex-wife died approximately seven years after the divorce. (See Doc. #75-2, at 21).

The parties dispute the exact parameters of plaintiff and Brooks-Ruiz's living arrangements. But the parties agree that, after plaintiff and Brooks-Ruiz were married, they generally spent weekdays together at plaintiff's apartment in East Harlem, Manhattan, along with two of plaintiff's children. Plaintiff and his children spent weekends at plaintiff's home at 111 Linden Place in Middletown, New York (the "Middletown Property"). Brooks-Ruiz spent weekends at a home she owned at 7609 Aquatic Drive in Arverne, New York (the "Arverne Property"), which is in the Rockaways, Queens.

---

[2]   Statements of undisputed material facts "will be deemed to be admitted for the purposes of the motion unless specifically controverted by" the opposing party, and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(c)–(d). On several occasions, the parties dispute statements of material fact by objecting to the opposing party's phraseology or attacking witness credibility rather than by citing to admissible evidence. The Court has independently reviewed statements of material facts the parties attempt to controvert in this matter and, when supported by admissible evidence, the Court deems them undisputed for the purpose of the motion. See, e.g., Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019) (summary order).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

According to Brooks-Ruiz, the Arverne Property is a two-family detached home, with two residences side-by-side. (Doc. #77-3, at 26). One side is a duplex with three bedrooms, two bathrooms, a garage, and a backyard, and the other side has one bedroom and one bathroom. (Id. at 26–27). When she spent time there, Brooks-Ruiz occupied the duplex. (Id.). Although she regularly rented the one-bedroom residence, she had never rented the duplex out before she allegedly rented it to plaintiff, as described below. (Id. at 27, 40).

II.     Plaintiff's Insurance Policies with Liberty Mutual

Liberty Mutual issued plaintiff two homeowner's insurance policies covering the Middletown Property, one with a policy period of September 13, 2016, to September 13, 2017 (the "2016 Policy") (Doc. #76-1), and the second with a policy period of September 13, 2017, to September 13, 2018 (the "2017 Policy" and, together, the "Policies"). (Doc. #76-2).

The Policies contain the following "Concealment or Fraud Provision":

> **2. Concealment Or Fraud.**
> We do not provide coverage for the "insured" who, whether before or after a loss, has:
>     a. Intentionally concealed or misrepresented any material fact or circumstance; or
>     b. Engaged in fraudulent conduct;
> relating to this insurance.

(Doc. #76-1 at ECF 35; Doc. #76-2 at ECF 35).[3]

The Policies also contain the following provision regarding "Additional Living Expenses":

> 1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

3

(Doc. #76-1 at ECF 30; Doc. #76-2 at ECF 30).

III.     Plaintiff's Insurance Claims

Following flooding at the Middletown Property caused by a burst pipe in January 2017, plaintiff filed a claim with Liberty Mutual pursuant to the 2016 Policy. Plaintiff retained a public adjuster, Robert D'Amore, to assist him.[4]

Among other things, plaintiff sought coverage of certain Additional Living Expenses, or "ALE." After the pipe burst, plaintiff could no longer spend weekends at the Middletown Property, and he instead spent weekends with Brooks-Ruiz in her duplex at the Arverne Property. Plaintiff then made an ALE claim for rent payments he purportedly made to Brooks-Ruiz to reside with her at the Arverne Property.

William Traas was Liberty Mutual's claims handler. On March 29, 2017, D'Amore forwarded Traas a lease agreement between plaintiff and Brooks-Ruiz, styled in the agreement as Yolanda Brooks. (Doc. #76-3). Pursuant to the lease agreement, Ruiz agreed to pay Brooks-Ruiz a security deposit of $1,000 and monthly rent of $4,000. (Id. at ECF 3). In his cover email, D'Amore explained:

> The insured is complaining that no one is paying or reimbursing the temporary rental house. The insured paid $8,000 for February and March and now needs to pay April in a few days. He also put down a security deposit which we are not asking for. The lease and rental checks are attached. Please handle or forward to the proper person.

(Id. at ECF 2).

---

[4] "A Public Adjuster is any person, firm, association or corporation who acts on behalf of an insured in negotiating for the settlement of a claim or claims for loss or damage to property of the insured." Agents and Brokers, N.Y.S. Dep't of Fin. Servs., https://www.dfs.ny.gov/apps_and_licensing/agents_and_brokers/lic_app_ia_pa (last visited Feb. 14, 2022).

On March 31, 2017, D'Amore emailed Traas the following discussion points in support of plaintiff's ALE claim:

- The insured has a 6 bedroom, 6 bath home with a garage in Middletown. He also has a one bedroom apartment in NYC with a small office and single bath.
- He has 6 children and several grandchildren who often visit him[.]
- His normal lifestyle is to spend Thursday through Sunday at his home in Middletown and spend time with his family. This can be proven by Easy Pass statements and neighbors. The fact that the house is in Middletown is irrelevant to his lifestyle, but having a large home available is very relevant.
- He was able to find a 3 bedroom, 3 &1/2 bath house for rent in Queens. The house is fully furnished and has a garage. All utilities are included in the $4,000 a month rent. While not as large as he had, he felt he could accept the somewhat smaller house because of the affordability and shorter commute time to his small apartment.
- There was no suitable house in Middletown. The insured checked real estate listings for rental of a 4 to 6 bedroom home fully furnished with utilities in Middletown and found none.
- The rental home is of less size and value of the insured home, within the cost of renting a large home and furniture anywhere within the area, and therefore should be considered an acceptable temporary location.

(Doc. #76-4).

Ruiz thereafter submitted copies of his rent checks, made out to "Yolanda Brooks," to Liberty Mutual for reimbursement. (See, e.g., Doc. #76-6).

Following flooding at the Middletown Property caused by another burst pipe in January 2018, plaintiff made a claim with Liberty Mutual pursuant to the 2017 Policy. In connection with this second claim, plaintiff continued to reside with Brooks-Ruiz in her duplex at the Arverne Property and again sought reimbursement for rental payments made to her.

IV.   Liberty Mutual's Investigation

Liberty Mutual referred plaintiff's 2018 claim for investigation, "initially for possible overlap or duplication" with plaintiff's 2017 claim. (Doc. #75 ("Kuitwaard Decl.") ¶ 5).

5

As part of the investigation, Karen Kuitwaard, a senior investigator with Liberty Mutual, met with plaintiff on March 19, 2018, at the Middletown Property. Kuitwaard asked plaintiff if he was married, and plaintiff responded that he was a widower. (See Kuitwaard Decl. ¶ 6; Doc. #83-4 ("Pl. Dep."), at 77–78).

Plaintiff never informed Liberty Mutual he was married, or married to Brooks-Ruiz, until his examination under oath ("EUO") by Liberty Mutual on August 16, 2018. At his EUO, plaintiff admitted he was married to Brooks-Ruiz and that he previously told Kuitwaard he was a widower. (Doc. #75-2, at 121–22).

Following its investigation, Liberty Mutual determined plaintiff violated the Concealment or Fraud Provision of the Policies and informed plaintiff by letter dated March 12, 2019, it would not cover any of plaintiff's claims relating to the Middletown Property. (Doc. #76-14, at 1).

Before denying plaintiff's claims, Liberty Mutual ultimately reimbursed plaintiff $43,943.76 in ALE related to the Arverne Property. Liberty Mutual would not have made those payments had Ruiz disclosed that Brooks-Ruiz was his wife.

## DISCUSSION

I.  <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[5]

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for it.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If "there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party" on the issue on which summary judgment is sought, "summary judgment is improper."  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Breach of the Concealment or Fraud Provision

Liberty Mutual contends plaintiff breached the Concealment or Fraud Provision of the Policies as a matter of law and, as a result, the Policies are void.

The Court agrees.

A.     Legal Standard

The Policies provide they are void if plaintiff "[i]ntentionally concealed or misrepresented any material fact or circumstance" or "[e]ngaged in fraudulent conduct." (Doc. #76-1 at ECF 35; Doc. #76-2 at ECF 35).

To void an insurance policy, "[t]he insurer must prove fraud by clear and convincing evidence." Varda, Inc. v. Ins. Co., 45 F.3d 634, 639 (2d Cir. 1995). To establish fraud under New York law, the moving party "must prove a misrepresentation or a material omission of fact which was false and known to be false by the other party, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).

Whether a misrepresentation or omission "reaches the level of being material is typically for the factfinder unless the insurer proffers clear and substantially uncontradicted evidence concerning materiality." Magie v. Preferred Mut. Ins. Co., 91 A.D.3d 1232, 1234 (3d Dep't 2012). In the context of an insurance investigation, an insured's misrepresentation or omission is material as a matter of law if it "might have affected the attitude and action of the insurer" or

8

"may be said to have been calculated either to discourage, mislead or deflect the [insurer]'s investigation in any area that might seem to the [insurer], at that time, a relevant or productive area to investigate." Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 184 (2d Cir. 1984).

A court may infer an insured's scienter from conclusive evidence that the insured made knowing, material misrepresentations to the insurer that he cannot justify or explain. See, e.g., Leon Sylvester, Inc. v. Aetna Cas. & Sur. Co., 227 A.D.2d 212, 212 (1st Dep't 1996); Carlin v. Crum Forster Ins. Co., 191 A.D.2d 373, 373 (1st Dep't 1993); Rickert v. Travelers Ins. Co., 159 A.D.2d 758, 759–60 (3d Dep't 1990). For example, the New York Court of Appeals affirmed a grant of summary judgment in favor of an insurer when the insured submitted a proof of loss "grossly disparate" from what the insured actually lost and its explanation "[wa]s so unreasonable or fantastic that it is inescapable that fraud . . . occurred." Saks & Co. v. Cont'l Ins. Co., 23 N.Y.2d 161, 165–66 (1968).

A party claiming fraud must also show "its reliance on an alleged misrepresentation was justifiable or reasonable." Waterscape Resort LLC v. McGovern, 107 A.D.3d 571, 572 (1st Dep't 2013). "The fact that by the exercise of diligence it might have discovered the falsity of the representation does not relieve that person making it from the consequences of his act." Colin v. Hamilton Fire Ins. Co., 251 N.Y. 312, 314–15 (1929). However, when "a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, [it] cannot claim justifiable reliance on the [adverse party]'s misrepresentations." Shao v. 39 Coll. Point Corp., 309 A.D.2d 850, 851 (2d Dep't 2003).

Finally, to sustain a fraud claim, the asserting party must show a causal connection between the "act of deception" and its injury. See Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57 (1999).

B.   Analysis

Liberty Mutual has demonstrated as a matter of law that plaintiff violated the Concealment or Fraud Provision. That is, it is undisputed plaintiff intentionally omitted his relationship with Brooks-Ruiz and misrepresented his connection to the Arverne Property.

1.   Materiality

Liberty Mutual has established plaintiff's relationship with Brooks-Ruiz was material as a matter of law. If Liberty Mutual had known plaintiff was married to Brooks-Ruiz, it would not have reimbursed plaintiff for rental payments to reside with Brooks-Ruiz at the Arverne Property. In other words, it is undisputed plaintiff's omission "affected the attitude and action of" Liberty Mutual in reimbursing him. Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d at 184.

2.   Scienter

Liberty Mutual has also established scienter as a matter of law. Liberty Mutual presents clear and convincing evidence that plaintiff concealed his relationship to Brooks-Ruiz from Liberty Mutual and misrepresented his connection to the Arverne Property.

a.   Concealment

Liberty Mutual offers conclusive evidence plaintiff never informed it that he was married to Brooks-Ruiz. Traas testified at his deposition that D'Amore never told him plaintiff was married or that the Arverne Property was owned by plaintiff's wife. (Doc. #83-2, at 134). D'Amore's emails, one of which forwards an email from plaintiff, nowhere suggest plaintiff and Brooks-Ruiz were married. (To the contrary, the emails imply plaintiff found the Arverne

Property when searching rental listings.) Moreover, plaintiff lied to Liberty Mutual's investigator when she asked him about his marital status.[6]

None of plaintiff's arguments are sufficient to create a genuine dispute of material fact on this issue.

First, plaintiff testified at his deposition that D'Amore told plaintiff by phone he informed Liberty Mutual that Brooks-Ruiz was plaintiff's wife. D'Amore's out-of-court statements to plaintiff, as reported by plaintiff and which plaintiff is offering for the truth of the matter asserted, are inadmissible hearsay and thus may not be considered on summary judgment. See, e.g., Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d at 600–01 (disregarding portions of attorney affirmation describing statements made by potential witness to him by phone as inadmissible hearsay).

Second, plaintiff testified he "[a]bsolutely" asked D'Amore to inform Liberty Mutual that his wife owned the Arverne Property. (Pl. Dep. at 68). This is insufficient to create a genuine dispute of material fact. Plaintiff's deposition testimony is conclusory and contradicted by all other evidence in the record.

To the extent plaintiff is suggesting D'Amore concealed plaintiff's marital status of his own accord and lied to plaintiff about it, plaintiff is asking the Court to draw "inferences [that], while not entirely outside the realm of possibility, are too speculative and unsubstantiated to defeat summary judgment." Comolli v. Huntington Learning Ctrs., Inc., 683 F. App'x 27, 30 (2d Cir. 2017) (summary order). Plaintiff offers no evidence to support this theory, and no motive is

---

[6] Liberty Mutual suggests throughout its papers that Brooks-Ruiz used the name "Yolanda Brooks" rather than "Yolanda Brooks-Ruiz" in the lease agreement for the Arverne Property to conceal their marriage from Liberty Mutual. It is, however, undisputed that Brooks-Ruiz always used the name "Yolanda Brooks" professionally. Drawing all inferences in favor of plaintiff on summary judgment, the Court does not consider Liberty Mutual's argument in its analysis.

11

clear, especially considering D'Amore did not receive a fee for plaintiff's ALE claims. But even if the Court did draw those inferences, plaintiff's attempt to distance himself from the conduct of his retained public adjuster would be "unavailing under agency principles." Latha Rest. Corp. v. Tower Ins., 38 A.D.3d 321, 322 (1st Dep't 2007) (rejecting attempt by insured to attribute fraud in insurance claims to its public adjuster).

Third, throughout his opposition papers, plaintiff implies Traas's statements cannot be credited because of Traas's animus toward plaintiff. As it must on summary judgment, the Court credits plaintiff's testimony that Traas used racial slurs when investigating plaintiff's prior insurance claim in 2004. But these facts do not raise a genuine dispute regarding the substance of Traas's statements that he did not know plaintiff and Brooks-Ruiz were married when plaintiff submitted his ALE claim. As explained above, plaintiff offers no admissible evidence to the contrary. Again, plaintiff's version of events—that Traas lied at his deposition because of racial animus toward plaintiff—is "too speculative and unsubstantiated to defeat summary judgment." Comolli v. Huntington Learning Ctrs., Inc., 683 F. App'x at 30.

Fourth, plaintiff suggests in his opposition that Kuitwaard's sworn declaration cannot be credited because she misled plaintiff about the nature of her visit to the Middletown Property in 2018 and because of "the numerous missteps in her investigation." (Doc. #82, at 9). Even assuming Kuitwaard did mislead plaintiff about the purpose of her visit in 2018 and did make numerous missteps in her investigation, plaintiff does not explain how Kuitwaard's conduct casts doubt on the relevant fact set forth in her declaration—namely, that she asked plaintiff whether he was married, and he lied and said he was a widower.

12

b.      Misrepresentation

Liberty Mutual also offers conclusive evidence plaintiff misrepresented his connection to the Arverne Property.

D'Amore's emails to Liberty Mutual clearly mischaracterize how plaintiff chose to rent the Arverne Property and the circumstances under which he did so. One email states plaintiff "was able to find a 3 bedroom, 3 & 1/2 bath house for rent in Queens" (Doc. #76-4), which indicates plaintiff searched for and found an active rental listing, not that he wanted to move in with his wife to share her home, a home she had never rented to anyone else.

Another email notes that plaintiff "put down a security deposit which we are not asking for"; the Court agrees with Liberty Mutual's assertion that "[o]ther than to extract money from an insurance company, a wife would not seek a security deposit from her own husband, particularly in premises where she still resided." (Doc. #76 ¶ 36).

As explained above, plaintiff's myriad theories about D'Amore, Traas, and Kuitwaard fail to create a genuine dispute of material fact on this issue.

3.      Reliance

Next, Liberty Mutual has shown it reasonably relied on plaintiff's omissions and misrepresentations as a matter of law. There is no evidence Liberty Mutual should have known from plaintiff's ALE claim documentation that further investigation was warranted. Colin v. Hamilton Fire Ins. Co., 251 N.Y. at 314–15. Plaintiff argues Liberty Mutual cannot claim reasonable reliance on plaintiff's ALE claim submissions because Liberty Mutual could have discovered plaintiff was married to Brooks-Ruiz by looking at her public Facebook photos. Plaintiff's cited authorities, however, are inapposite.

13

In Stuart Silver Associates, Inc. v. Baco Development Corp., the Appellate Division, First Department, concluded plaintiffs did not reasonably rely on defendants' purported misrepresentations in a real estate venture when plaintiffs were sophisticated investors who did not conduct any due diligence on the transaction despite their awareness of its inherent risk and did not, for example, read defendants' prospectus. 245 A.D.2d 96, 99 (1st Dep't 1997). Here, Liberty Mutual was not seeking to engage in a potentially risky transaction without performing due diligence, it was relying on the representations and documentation provided by plaintiff's retained public adjuster.

And in Jack Kent Cooke, Inc. v. Saatchi & Saatchi North America, the Appellate Division, First Department, concluded a tenant did not reasonably rely on a landlord's rental calculations when the "books and records upon which the landlord's [calculations] were based" were "freely available" and never requested by the tenant. 222 A.D.2d 334, 335 (1st Dep't 1995). Here, there was no obvious connection between plaintiff's ALE claim and Brooks-Ruiz's Facebook page such that Liberty Mutual had an affirmative obligation to review her social media before reimbursing plaintiff's rental payments to her.

        4.     Injury

Finally, it is undisputed Liberty Mutual was injured because of plaintiff's conduct. As explained above, Liberty Mutual covered $43,943.76 in ALE it would not have covered had it known plaintiff and Brooks-Ruiz were married.

Accordingly, Liberty Mutual's motion for partial summary judgment must be granted.

## CONCLUSION

Liberty Mutual's partial motion for summary judgment is GRANTED.

Plaintiff's claims are DISMISSED.

With respect to Liberty Mutual's counterclaims, plaintiff and counsel for defendant are directed to appear for a case management conference on **April 6, 2022, at 12:00 p.m.,** at which time they shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, and what efforts they have made and will make to settle the counterclaims.  The conference will be held in person at the White Plains courthouse, Courtroom 620.

The Clerk is instructed to terminate the motion.  (Doc. #74).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: February 14, 2022
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge